DORSET (FIRST NAT. BANK OF NORTH BENNINGTON v.). See Case No. 4,808.

---

## Case No. 4,012.

### DORSETT v. MARSHALL et al.

[5 Cranch, C. C. 96.][1]

Circuit Court, District of Columbia. March Term, 1837.

HUSBAND AND WIFE — SEPARATE ESTATE—RIGHTS OF HUSBAND.

If personal property be conveyed to a trustee for the sole and separate use of a feme covert, her executors, administrators, and assigns, free and clear from any control or demand of the husband or his creditors, with leave to lend the money with the approbation of the wife, for her "like sole and separate use," money thus lent, and unpaid at the death of the wife, does not become the property of the husband; nor is he entitled thereto in equity; although, (standing in the place of administrator under the Maryland law of 1798, c. 101, cl. 5, § 8,) he might recover it at law.

[This was a bill in equity by Amelia T. Dorsett against Robert Marshall and others for an injunction.]

Robert Marshall, the defendant, intermarried with Ann Berry. Shortly before the marriage, they entered into the following agreement: "Robert Marshall and Ann Berry; marriage contract: Whereas Robert Marshall and Ann Berry, both of Prince George's county, state of Maryland, are about to intermarry, it is therefore agreed by the parties before the marriage, that the said Ann Berry shall hold in herself all her right, title, and interest in the following funds of her own, namely, one hundred and fifty shares of stock in the Patriotic Bank, on which $10 have been paid, which stock stands to the credit of Ann Berry; also one hundred and thirty-seven shares of stock in the Central Bank of Georgetown and Washington, upon which $11 per share has been paid, and $3,500 in the bonds of Charles Glover. Given under our hands and seals, this 17th day of February, 1820. Robert Marshall, (Seal.) Ann Berry. (Seal.) Witness, James H. Y. Dorsett." Afterwards by indenture, dated the 1st of May, 1824, between

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

Marshall and his wife of the first part, and Susan G. Beall of the other part, after reciting substantially the marriage agreement, and that Marshall did, at the same time agree to make any other or further instrument of conveyance which might be considered necessary fully to assure and convey the said stock and debts "to the sole and separate use of the said Ann Berry, her heirs and assigns, free and clear from any debts, control, demands, or incumbrances of the said Robert Marshall;" that the bank-stock had been sold by mutual consent; that judgment had been obtained against Glover for $2,000. (part of the $3,500) in the name of Robert Marshall, with interest and costs; and another judgment for $1,500, with interest and costs, (being the residue of the said $3,500,) and that the said Marshall and wife had agreed to settle those judgments and a certain tract of land therein mentioned and described, by a more full, complete, and formal instrument of writing than the marriage agreement above mentioned, according to the terms of the present instrument; Marshall and wife. in consideration of the premises, and for the more fully, completely, and perfectly carrying into effect the marriage contract between them, and in further consideration of five dollars paid to them by the said Susan G. Beall, bargain and sell to the said Susan G. Beall her heirs, executors, administrators, and assigns, the tract of fifty acres, therein described, for and during the joint lives of Marshall and wife and the survivor of them, and the two judgments against Glover. To have and to hold the land for life as aforesaid, and the judgments absolutely, "to the said Susan G. Beall, her heirs, executors, administrators, and assigns, in trust to hold the land for the use of Marshall and wife during their joint lives, and for the use of the husband, if he should survive his wife, during his natural life and no longer, upon the express agreement and understanding that the land should not be subject to, or liable for his debts or engagements; and further in trust that the said Robert Marshall should have to his own use, free of the marriage contract, the judgment against Glover for the $2,000, with interest and costs, and the said Susan G. Beall should hold the other judgment for $1,500. with interest and costs, for the sole and separate use of the said Ann Marshall, her executors, administrators, and assigns, free and clear from any control or demand of the said Robert Marshall, or of his creditors, debts, or engagements; and upon payment of the said judgment or any part thereof, to invest the said money in stock. or to loan the same on interest with the approbation of the said Ann Marshall; and in further trust that the said Ann Marshall. during the life of her husband, may dispose of said judgment, or the proceeds thereof; and of her right, interest, and estate in the said tract of land after the death of the said Robert Marshall,

either by her last will and testament, or by any instrument of writing under her hand and seal in the presence of two witnesses, during her coverture in the same manner as if she were single."

Mrs. Beall received the money upon the judgments against Glover, and, with the consent of Mrs. Marshall, lent $100 to her husband, Robert Marshall, and $400 to her sister, Mrs. Dorsett; and took their respective notes, payable "to Susan G. Beall, trustee for Ann Marshall." Before these notes were paid, Mrs. Ann Marshall died, without having disposed of her property, in the manner designated in the deed of trust. Mr. Marshall, standing in place of an administrator of his wife's estate, under the Maryland act of 1798, c. 101, cl. 5, § 8. brought his action at law against Mrs. Dorsett for the $400 lent to her by Mrs. Beall as trustee for Mrs. Marshall, and, under the opinion of this court that the legal right of action was in him, by virtue of the said act of assembly of Maryland, recovered judgment. at March term, 1836, (Marshall v. Dorsett [Case No. 9,128]); and Mrs. Beall brought a suit at law against Mr. Marshall for the $100 of the trust-money lent to him; upon which, on the 17th of April, 1835, he filed his bill stating all these matters, and claiming the whole of the trust-money as his own property by virtue of his marital rights, and obtained an injunction to stay execution against him, until the further order of the court. Mrs. Dorsett, also, filed her bill, on the 29th of November, 1836, against the said Robert Marshall, charging all these matters, and claiming, with others, the whole of Mrs. Marshall's interest in the trust-fund. as her next of kin, to the entire exclusion of Mr. Marshall; and on that ground praying an injunction to stay execution upon the judgment for the $400 which he had recovered at law against her; and for leave to file this her bill of interpleader, and that the said Susan G. Beall and Robert Marshall, &c., may interplead; and that she may account for her "trusteeship;" that the trust-fund may be decreed to the heirs of Mrs. Marshall as before stated, "or to such as the law may give it to," &c.

Before any proceedings were had upon that bill. Mrs. Dorsett. on the 6th of February, 1837. filed another bill against the said Robert Marshall, Richard H. Marshall, Susan G. Beall, and the other heirs of the deceased Ann Marshall, in which she states the judgment at law for $400 obtained against her by Robert Marshall, under the instruction of the court to the jury that, by the law of Maryland he, as administrator of the estate of his wife, had a right at law, to recover the same; that he is insolvent, and. if he should receive the money, would be unable to refund it to the heirs of his wife if this court should so decree; that by the marriage contract the property belongs to the heirs of his wife, and that he has no right to it; that he has filed his bill against Susan G. Beall, as trustee of his

wife, and claims the property as his own and for his own use; that Susan G. Beall resists and defends the said bill, upon the ground that the property belongs to her and the other co-heirs of Mrs. Marshall, (naming them,) who have interpleaded in "the said suit in chancery," and claimed the same; that the said Susan G. Beall, as trustee of Mrs. Marshall, has notified the complainant not to pay the amount of the judgment to the said Robert Marshall, who cannot recover the same in equity; that the said Robert Marshall, to defraud the heirs, has assigned the judgment to his brother, Richard H. Marshall, who has sued out an execution against the property of the complainant; wherefore she prayed an injunction, &c., which was ordered by one of the judges. To this bill the defendants, R. and R. H. Marshall, demurred, for want of equity, and moved to dissolve the injunction, and dismiss the bill upon the same ground.

R. S. Coxe, for defendants, contended that the marriage contract only restrained the marital rights of the husband during the coverture. That, under the Maryland act of 1798, c. 101, cl. 5, § 8, the husband becomes the owner of all his wife's choses in action, not reduced into possession during the coverture, without taking out letters of administration upon her estate; and is entitled to sue upon them in his own right, and to recover for his own use. The wife's power of appointment was limited to the life of her husband, but she never exercised it. If the husband did not acquire the legal right to this money by the death of his wife, the defence should have been at law. The judgment in the action at law is conclusive. The whole structure of this bill is anomalous and unprecedented. It is not a bill of interpleader. The husband, under the Maryland law, stands in the place of administrator; and, therefore, has a right to claim under the trust, which was to her, her heirs, executors, and administrators. The word "heirs" refers to the real estate only; "administrators" to the personal. The complainant ought to have brought the money into court, and denied collusion.

Mr. Coxe cited Blake, 31; Eden, 247; Fettiplace v. Gorges, 1 Ves. Jr. 46; 7 Dane, Abr. c. 19, p. 351; Stewart v. Stewart, 7 Johns. Ch. 229, 243, 244, 246; 2 Story, Eq. Jur. pp. 113, 114, §§ 806, 807; Id., pp. 116, 117, §§ 809, 810; Id., p. 127, § 824; Fenner v. Taylor, 1 Sim. 169; 2 Cond. Eng. Ch. 86; Sugd. Powers, 315.

W. L. Brent and Mr. Jones, contra, cited Ward v. Thompson, 6 Gill & J. 349; Brailsford v. Georgia, 3 Dall. [3 U. S.] 1; 1 Rop. Husb. & Wife, 120, 130, 221; Toll. Ex'rs. 225; Watt v. Watt, 3 Ves. 244; Cranley v. Hale, 14 Ves. 307; Garrick v. Camden, 14 Ves. 382; Bailey v. Wright, 18 Ves. 49, 1 Swanst. 39; Wimbles v. Pitcher, 12 Ves. 433; Anderson v. Dawson, 15 Ves. 532; 1 Mod. 45; Rayner v. Mowbray, 3 Brown Ch. 234.

The court (nem. con.) was of opinion that Robert Marshall, the husband, had conveyed to Susan G. Beall, the trustee, all his marital rights over the property assigned to her; so that, in equity, he had no right thereto upon the death of his wife, although he might, at law, be entitled to recover in his own name, under the testamentary law of Maryland; and that the demurrer should be overruled, and the injunction continued until final hearing.

The court also dissolved the injunction in the case of Marshall v. Beall [6 How. (47 U. S.) 70].

CRANCH, Chief Judge (after stating the case). The only question now judicially before the court is, whether there is sufficient equity in the present bill to sustain it. It seems to me not to stand alone. It is connected with the two former bills, not only by reference, but by the subject-matter; and if all three bills are taken into view, or even the two last bills, I think there is sufficient equity. The court has decided, at law, that, upon the death of the wife, the legal title to her personal estate and choses in action devolved upon the husband, and that he had a right of action against this complainant; although she had given her note for the money to Susan G. Beall, as trustee. The question now is, whether the next of kin of Mrs. Marshall are not, in equity, entitled to this money under the antenuptial contract, and the deed of trust made by Robert Marshall and his wife to Susan G. Beall. I think they have; and that such was the intention of the parties, both in the antenuptial agreement, and in the deed intended to carry that agreement into effect. The words of that antenuptial agreement are, not that she shall have the use of her property during the coverture, with a power to dispose of it by will, or otherwise, but that she shall "hold in herself" the property designated; that is, it shall never go out of her, the marital right shall not affect it, it shall be retained as if she were sole. This seems to me to be the evident intent of the parties. The deed of trust of the 1st of May, 1824, referring to the antenuptial contract of the 17th of February, 1820, states that "the said Robert Marshall did, at the same time, agree to make any other or further instrument of conveyance, which might be considered necessary, fully to assure and convey the said stock and debts above mentioned to the sole and separate use of the said Ann Berry, her heirs, and assigns, free and clear from any debts, control, demands, or incumbrances, of the said Robert Marshall." And the indenture witnessed that the said Robert Marshall and Ann Marshall conveyed to the said Susan G. Beall, her heirs, and assigns, the property therein mentioned, including fifty acres of land on which they then resided, and which had descended to her from her father, in trust, to hold the land for the joint use of

the husband and wife during their joint lives; and. if he should survive her, then during his life. And in trust, that the said Robert should have the $2.000 judgment against Glover, for his sole and separate use, free and clear of the marriage contract, and of her separate claim. And in further trust, that the said Susan G. Beall should hold the $1,500 judgment for the sole and separate use of the said Ann Marshall, her executors, administrators, and assigns, free and clear of any control or demand of the said Robert Marshall, or of his creditors, debts, or engagements; and to vest the money in stock, or to loan the same on interest, with the approbation of the said Ann Marshall, for the like sole and separate use of the said Ann Marshall. And, in further trust, that the said Ann Marshall, during the life of her husband, might dispose of the said judgment, or its proceeds, by her last will and testament, or by any instrument of writing under her hand and seal, in the presence of two witnesses, during her coverture, in the same manner as if she were single. All the property conveyed by this deed of trust belonged to the wife, and was secured to her sole and separate use by the marriage contract; but, by this deed. she gives her husband an absolute life estate in the land, instead of a contingent estate by curtesy, of which. at that time, he had only a possibility, as he had no child by that wife; and she also gives him absolutely the judgment against Glover, for $2,000 and interest, in consideration of which he conveys to the trustee all his right, if he had any, in the $1,500 judgment, and conveys it absolutely, for the use of his wife, not only during the coverture, but for the use of herself, her executors, administrators, and assigns, which is as great an estate as can be granted in a chattel. He parted with his whole marital right over that subject for a valuable, and more than adequate consideration; and it is against conscience for him now to set up this claim. The act of Maryland devolves upon the surviving husband the legal right to the choses in action of his wife; but he takes them bound by all his conscientious obligations. I am, therefore, of opinion that there is sufficient equity in the bill to support a decree. and that the injunction ought to be continued until final hearing.

It has been suggested that the power reserved to the wife by the deed of trust, to dispose of the trust fund during the coverture, implies a remaining interest, or title. in the husband to that fund. But her disability to control the trust fund did not result from any remaining title in the husband, but from the general disability of a feme covert to make any contract, or to dispose of her property in any manner, during the coverture; and the deed of trust was evidently intended to remove that disability, and not merely to impart to her a power limited to the period of her coverture. or to limit her

power of disposing of her property to that period. If the husband had died first, her jus disponendi would have revived in as full force as she enjoyed it before her marriage.